**UNITED STATES OF AMERICA**
**DISTRICT OF MINNESOTA**

---

United States of America, ex rel.
James B. Kinney,

Plaintiff,

v.

Rebecca Stoltz, an individual, Kelly Spratt, an individual, Geraldine Peterson, an individual, and Jennifer Peterson, an individual,

Defendants.

Civil No. 01-1287 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Gary A. Weissman, Weissman Law Office, Minneapolis, Minnesota; Phillip E. Benson, Warren Benson Law Group, Anaheim Hills, California; and Donald R. Warren, Warren Benson Law Group, San Diego, California, for Plaintiff.

David T. Schultz and Kari L. Jahnke, Halleland, Lewis, Nilan, Sipkins & Johnson P.A., Minneapolis, Minnesota for Defendants.

---

**Introduction**

Before the Court in this qui tam action are three motions. Defendants Rebecca Stoltz, Kelly Spratt, Geraldine Peterson, and Jennifer Peterson, all of whom are or were employees of Hennepin County working at Hennepin County Medical Center, have asked the Court to take judicial notice of several categories of documents and have moved to dismiss Plaintiff James B. Kinney's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of



APR 05 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 05 2002
DEPUTY CLERK

the Federal Rules of Civil Procedure. For his part, Kinney seeks the entry of a default against Hennepin County, which appears as an additional defendant on the "First Amended Complaint" that Kinney filed after the Defendants filed their motion to dismiss.

**Background**

The present lawsuit is related to qui tam litigation previously before the Court in the matter captioned United States ex rel. Kinney v. Hennepin County Medical Center et al, Civ. No. 97-1680 ("Kinney I"). In Kinney I, qui tam relator Kinney, a Hennepin County paramedic, complained that Hennepin County Medical Center ("HCMC") had knowingly and falsely represented to the United States that certain medically unnecessary ambulance transports were "medically necessary" and thus eligible for reimbursement by Medicare. Kinney alleged that HCMC accomplished these false representations by obtaining false certifications of medical necessity from the physicians whom Hennepin Faculty Associates ("HFA") provides to staff the emergency room.

On January 22, 2001, this Court dismissed HCMC from Kinney I on the grounds that HCMC, a county governmental entity, did not fall within the scope of the term "person" as used in the False Claims Act. The Court reasoned that, because (a) the False Claims Act imposes treble damages that are essentially punitive in nature and (b) Congress did not expressly authorize the imposition of punitive damages on governmental entities, the common-law presumption that punitive damages may not be imposed on a governmental entity applies to exclude HCMC from the scope of the term

"person" under the False Claims Act. The Court expressly determined that there was no just reason for delay and directed the entry of judgment as to HCMC pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Kinney did not appeal from that judgment.

Kinney I proceeded against HFA, and Kinney deposed eight HCMC employees, including the four defendants in the present action. At the close of discovery, HFA moved for summary judgment. Kinney cross-moved for partial summary judgment. A hearing was held on the parties' summary judgment motions in Kinney I on July 6, 2001.

On July 17, 2001, relator Kinney filed the present qui tam action against the four individual defendants: Rebecca Stoltz, Jennifer Peterson, Geraldine Peterson, and Kelly Spratt. Stoltz is the Billing Manager for HCMC. Jennifer Peterson is HCMC's former director of Emergency Medical Services. Spratt is the current Manager of Ambulance Services, replacing Geraldine Peterson, who no longer works for HCMC.

By a Memorandum Opinion and Order dated August 22, 2001, this Court granted summary judgment to HFA in Kinney I, concluding from the undisputed facts in the record that Kinney's False Claims Act claims against HFA failed for lack of causation:

> [A]ny statements made to the United States government (or any state agency distributing federal funds) regarding the "medical necessity" of ambulance transports were inherent in the HCPCS and revenue codes that HCMC assigned to the ALS-Minor ambulance services. Those codes were assigned regardless of whether an emergency room physician had signed the "medical necessity" block on the ambulance run sheet. The presence or absence of a signature on a run sheet had no effect on, and no tendency to effect, whether the claim was paid by Medicare or Medicaid.

Aug. 22, 2001 Mem. Op. and Order at 27; see also id. at 24. Final judgment was entered in Kinney I on August 22, 2001. Kinney did not appeal from the final judgment.

On September 6, 2001, the United States declined to intervene in the above-captioned qui tam action. The Defendants were served with the Complaint in the present action between October 5 and October 10, 2001. (Original Summons and Returns of Service (Doc. No. 8).) On October 23, 2001, Hennepin County extended to the individual defendants the right to indemnification under the County's Indemnification Plan. On October 24, 2001, Defendants moved to dismiss the Complaint on the grounds that (a) this Court lacks subject matter jurisdiction under Rule 12(b)(1) because the claims asserted in this action came from information that was publicly disclosed during the Kinney I litigation, and (b) the Complaint fails to state a claim under Rule 12(b)(6) because res judicata and/or collateral estoppel preclude the present suit against the individual defendants.

On November 27, 2001, Kinney's counsel delivered a copy of a "First Amended Complaint" in this matter to Defendants' counsel. The "First Amended Complaint" only adds to the original Complaint; it does not delete any substantive allegations. In both the original Complaint and the "First Amended Complaint," Kinney alleges that the four individual defendants violated the False Claims Act by billing Medicare for medically unnecessary "ALS Minor" ambulance transports -- transports for which Medicare reimbursement is allegedly not available. Kinney further alleges that the individual

defendants violated the False Claims Act by billing Medicare for ambulance transports for which no medical necessity certification form had been signed by an emergency room physician. By his "First Amended Complaint," Kinney also adds Hennepin County as a party and adds a third count seeking relief specifically against the County. Kinney prays for a declaration that, because the County has offered indemnification coverage to the four individual defendants for this lawsuit, it has waived its immunity from liability for punitive damages and Kinney may therefore bring claims against the County under the qui tam provisions of the False Claims Act.

On December 11, 2002, the Court directed the parties to file supplemental post-hearing briefs on whether Kinney's filing of the "First Amended Complaint," done without leave of the Court after the Defendants filed the Motion to Dismiss, is effective pursuant to Rule 15(a). The Court also directed counsel to address the impact of the "First Amended Complaint" on the pending Motion to Dismiss, assuming the Complaint has been amended.

**Analysis**

**I. Plaintiff's "Amendment" of the Complaint**

Kinney contends that Rule 15(a) permits him to "amend" his Complaint as a matter of right to add Hennepin County as a party defendant and obtain a declaration that Hennepin County has waived its immunity from punitive damages. Rule 15(a) of the Federal Rules of Civil Procedure provides that:

> a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). In response to the Court's request for supplemental briefing, the Defendants raise two issues regarding the effectiveness of Kinney's "amendment" of his Complaint: (1) whether a motion to dismiss constitutes a "responsive pleading" that forecloses amendment "as a matter of course," and (2) whether a party can amend "as a matter of course" to add a new party defendant.

Rule 15 facilitates both the amendment of pleadings and the filing of supplemental pleadings.

> The distinction between an amended pleading under Rule 15(a) and a supplemental pleading under Rule 15(d) of the Fed. R. Civ. P. has been stated as follows: "An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause."

United States v. Vorachek, 563 F.2d 884, 886 (8th Cir. 1977) (quoting Berssenbrugge v. Luce Mfg. Co., 30 F. Supp. 101 (W.D. Mo. 1939)); see also 3 Moore's Federal Practice § 15.02[1] at 15-8 to -9 (3d ed.); Fed. R. Civ. P. 15(d) (stating that a supplemental pleading "set[s] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."). Thus, a party may supplement a pleading under Rule 15(d) to add new parties when events occurring after the original pleading has been filed make it necessary to do so. See Griffin v. County School Bd. of Prince Edward

County, 377 U.S. 218, 227 (1964).

The distinction between supplemental pleadings and amended pleadings is more than one of mere nomenclature. A party has no right under Rule 15 to supplement its pleading as a matter of course: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). The "First Amended Complaint" adds Hennepin County as a party and seeks relief as against the County based upon the County's decision to offer indemnification to the individual defendants -- an event that occurred after the original Complaint was filed and served. The "First Amended Complaint" is therefore a supplemental pleading, not an amended pleading, and leave of Court was required before it could be filed. No leave was obtained, and the document shall therefore be stricken from the file.[1]

## II. Defendants' Request for Judicial Notice

Defendants have moved the Court to take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of three categories of documents: (1) the entire court record in Kinney I; (2) certain documents obtained from the Office of the Minnesota Attorney General pursuant to a Minnesota Government Practices Act request; and (3)

[1] Accordingly, Kinney's request for the entry of default against Hennepin County for failing to answer or otherwise respond to the First Amended Complaint is moot and will be denied as such.

letters of indemnification issued to the four defendants here by the Hennepin County Board of Commissioners. A trial court "shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Rule 201 governs only the judicial notice of "adjudicative facts."[2] Fed. R. Evid. 201(a); Qualley v. Clo-Tex Int'l Inc., 212 F.3d 1123, 1128 (8th Cir. 2000). The sort of adjudicative fact about which a trial court may take judicial notice is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court clearly can take judicial notice of the Orders it issued in Kinney I, the pleadings therein, and the motion papers filed with the Court by the parties. In light of

---

[2] The Eighth Circuit discussed the scope of Rule 201 as follows:

> The advisory committee notes to Rule 201 distinguish between "adjudicative facts" and "legislative facts." See id., adv. ctte. notes (citing 2 Kenneth Davis, Administrative Law Treatise at 353 (1958)). Adjudicative facts are "facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." Id.; see also U.S. v Gould, 536 F.2d 216, 219 (8th Cir. 1976) (stating that adjudicative facts concern "who did what, where, when, how and with what motive or intent.") (quoting 2 Kenneth Davis, Administrative Law Treatise § 15.03 at 353 (1958)). By contrast, "[l]egislative facts do not relate specifically to the activities or characteristics of the litigants. A court generally relies upon legislative facts when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties." Gould, 536 F.2d at 220.

Qualley v. Clo-Tex Int'l Inc., 212 F.3d 1123, 1128 (8th Cir. 2000).

the Court's analysis of its subject matter jurisdiction, infra, it need not consider whether it is appropriate to take judicial notice of the other categories of documents.

## III. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court begins its analysis of the Defendants' Motion to Dismiss with the question of whether this Court has subject matter jurisdiction to consider the claims before it. Defendants argue that this Court lacks jurisdiction over the present action because Kinney's lawsuit runs afoul of the "public disclosure" provision of the False Claims Act, § 3730(e)(4). Section 3730(e) bars the federal courts from exercising jurisdiction over certain actions, including

> an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). Defendants contend that Kinney's claims in this action are based upon HCMC's billing and electronic claims submission practices, and that Kinney learned about those practices through discovery in Kinney I, which constituted "public disclosure" in a "civil hearing." Defendants further contend that Kinney did not have direct and independent knowledge of that information before he brought the present lawsuit and, therefore, is not an "original source" of the information.

## A. Public disclosure in a civil hearing of allegations or transaction upon which the present qui tam action is based

In arguing that there was no public disclosure of the "allegations or transactions" underlying his present qui tam action, Kinney relies on United States ex rel. Springfield Terminal Railway Co. v. Quinn, 14 F.3d 645 (D.C. Cir. 1994). In Springfield, the court of appeals distinguished between "allegations or transactions" and ordinary "information," concluding that not all information in the public domain rises to the level of "allegations or transactions." Rather, the court of appeals observed that "Congress sought to prohibit qui tam actions only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain." Springfield, 14 F.3d at 654 (emphasis in original). Kinney argues that the facts regarding HCMC's billing and Medicare claims submission practices about which he learned in discovery in Kinney I are mere "information" and not essential elements of his allegations or transactions of fraudulent conduct. The Court disagrees.

In Kinney I, the emergency room physicians' signatures on the certifications of medical necessity were the focus of Kinney's allegations or transactions of fraudulent conduct. In support of his motion for partial summary judgment in Kinney I, Kinney averred that he witnessed doctors signing the run sheets in large batches in the emergency room. Kinney further averred that "HFA makes it all possible by having its physicians falsely certify ALS-Minor ambulance runs as 'medically necessary' when they do not

meet either the Medicare or Medicaid criteria for medically necessary." (Relator Aff. ¶ 10.) At the hearing on the cross-motions for summary judgment in Kinney I, the Court questioned how the signatures of HFA doctors on ambulance run sheets could have caused false claims to be paid or false statements to have been made, as Kinney had alleged. The Court observed that the undisputed evidence in the record established that HCMC's computerized billing system automatically converted the code for "ALS Minor" ambulance runs to HCPCS codes which implicitly represent that the ambulance runs were medically necessary. Furthermore, those HCPCS codes were assigned regardless of whether the run sheets for the "ALS Minor" runs bore a physician's signature in the medical necessity block. The very concerns this Court raised at the hearing about Kinney's case against the HFA are the essential allegations of the fraud asserted by Kinney in his current qui tam lawsuit.

The discovery relating to HCMC's billing and electronic claims filing procedures was filed with the Court in connection with HFA's motion for summary judgment, and an open hearing on HFA's and Kinney's cross-motions for summary judgment was held eleven days before Kinney brought the present qui tam action against the individual defendants. The July 6 summary judgment hearing was open to the public. A transcript of the hearing was prepared and has been available in the Clerk of Court's office as part of the record in the Kinney I proceedings. The documents filed in connection with the summary judgment motions and the hearing itself on those motions undoubtedly

constitutes "public disclosure" in a "civil hearing" of the essential allegations or transactions of allegedly fraudulent conduct upon which Kinney has based the July 17 Complaint.

The Eighth Circuit has explicitly endorsed the position, taken by the majority of circuits, that a qui tam suit is "based upon" a public disclosure "whenever the allegations in the suit and the disclosure are the same, 'regardless of where the relator obtained his information.'" Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., 276 F.3d 1032, 1045-47 (8th Cir. 2002) (quoting United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 324 (2d Cir. 1992)). Here the public disclosures made in connection with Kinney I and the allegations in the Kinney II lawsuit are the same. Thus, Kinney can avoid the jurisdictional bar of § 3730(e)(4)(A) only if he is an "original source" of the information within the meaning of § 3730(e)(4)(B).

**B. "Original Source" of the Information on which the Allegations of Fraud are Based**

Congress defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). The words "direct" and "independent" are intended to express two ideas, rather than one. Minnesota Ass'n of Nurse Anesthetists, 276 F.3d at 1048. "'Direct knowledge' under the False

Claims Act has been defined as knowledge that is 'marked by an absence of an intervening agency.'" United States ex rel. Barth v. Ridgedale Elec. Inc., 44 F.3d 699, 703 (8th Cir. 1995); see also United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Life. Ins. Co., 944 F.2d 1149, 1160 (3d Cir. 1991). "'Independent knowledge' has been consistently defined as knowledge that is not dependent upon public disclosure." Barth, 44 F.3d at 703.

Section 3730(e)(4)(B) does not require Kinney to have personal knowledge of each and every discrete piece of information supporting his allegations of fraud. See Minnesota Ass'n of Nurse Anesthetists, 276 F.3d at 1050. Kinney argues that he need not have direct and independent knowledge of HCMC's assignment of the billing codes that facilitated the electronic submission of the allegedly false claims for payment by the Government. He contends that it is sufficient if he had direct and independent knowledge of the fact that: (1) certain ambulance transports to HCMC, classified as "ALS Minor" runs based upon the nature of the injury or illness presented by the patient, are not "medically necessary" as that term is defined by Medicare, and (2) some patients transported to HCMC on "ALS Minor" runs had Medicare health insurance coverage. (Pl.'s Mem. Opp'n Mot. to Dismiss at 6-7.)

The Eighth Circuit has discussed at length what constitutes "direct knowledge" of fraud:

> A relator is said to have direct knowledge of fraud when he "saw [it] with his

> own eyes." The direct knowledge requirement was intended to avoid parasitic lawsuits by "disinterested outsider[s]" who "simply stumble across an interesting court file." Instead, the Act seeks to encourage persons with "first-hand knowledge of fraudulent misconduct," . . . or those "who are either close observers or otherwise involved in the fraudulent activity" to come forward. . . . Accordingly, "collateral research and investigations . . . [do] not establish 'direct and independent knowledge of the information on which the allegations are based within the meaning of § 3730(e)(4)(B).'"

Barth, 44 F.3d at 703 (emphasis in original) (internal citations omitted). A review of the Complaint in this matter, and the facts Kinney has identified as being known to him through first-hand observation, demonstrates that Kinney did not have "direct knowledge" of the allegations or transactions constituting the alleged FCA violations -- namely, HCMC's alleged manipulation of billing codes relating to "ALS-Minor" ambulance transports. Kinney was neither involved in, nor a close observer of, the activities that allegedly constitute the fraud perpetrated by the Defendants. Compare Minnesota Ass'n of Nurse Anesthetists, 276 F.3d at 1050 (determining that nurse anesthetists had direct knowledge where they often saw the anesthesiologist filling out forms used for billing with misleading information). Kinney derived his information concerning the alleged fraudulent transactions from the depositions of HCMC employees. "As such, he was a recipient of information and not a direct source." Barth, 44 F.3d at 704.

Even if Kinney can be found to have "direct and independent knowledge" of the allegations underlying the present qui tam action, he has not established that he satisfied the last statutory condition for qualifying as an original source. Section 3730(e)(4)(B)

also requires the relator to have "voluntarily provided the information to the Government before filing an action under this section which is based on the information." Kinney asserts that he provided information to the Government prior to the first lawsuit against HCMC and HFA, consisting of his knowledge that: (1) certain ambulance transports to HCMC, classified as "ALS Minor" runs based upon the nature of the injury or illness presented by the patient, are not "medically necessary" as that term is defined by Medicare, and (2) some patients transported to HCMC on "ALS Minor" runs had Medicare health insurance coverage. (Pl.'s Mem. Opp'n Mot. to Dismiss at 6-7.) Kinney has not shown that he made any voluntary disclosure to the Government relating to the acts allegedly perpetuated by the Defendants here. Based on the foregoing, the Court concludes that Kinney is not an "original source" of the information underlying the allegations upon which this action is based. Therefore, this Court lacks subject matter jurisdiction over the action pursuant to § 3730(e)(4)(A).[3]

---

[3] If Kinney were an "original source" and the Court had subject matter jurisdiction over the Complaint, it would still have to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Kinney purports to sue the Defendants in their "individual capacities." Kinney has not alleged, however, that any of the Defendants personally benefitted from the alleged submission of false claims to Medicare. See United States ex rel. Honeywell v. San Francisco Housing Auth., No. C99-1936 TEH, 2001 WL 793300 at *4 to *5 (N.D. Cal. Jul. 12, 2001). The allegations describing the Defendants' wrongful acts establish that they were acting as employees of HCMC at the time. The suit against them is really a suit against their governmental employer. Because Kinney cannot sue HCMC under the False Claims Act, neither can he sue the Defendants in their official capacity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985).

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

1. The First Amended Complaint (Doc. No. 16) is hereby **STRICKEN** as an unauthorized supplemental pleading;

2. The Plaintiff's Request for the Entry of Default against Hennepin County (Doc. No. 26) is **DENIED AS MOOT**;

3. The Defendants' Request for Judicial Notice (Doc. No. 11) is **GRANTED IN PART** as to the Court file in Kinney I;

4. The Defendants' Motion to Dismiss (Doc. No. 9) is **GRANTED**; and

5. The Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: April 5, 2002

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*